USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/22/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATTHEW JOHNSTON,

                Plaintiff,

      -against-

TOWN OF ORANGETOWN, RONALD DELO,
THOM KLEINER, JOSEPH RUTKOWSKI,
ARTHUR HIGGINS, THOMAS FITZMAURICE,
FRANK PENENO and EDWARD BOERA,

                Defendants.
-------------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

10 Civ. 8763 (GAY)

Plaintiff Matthew Johnston commenced the instant action pursuant to 42 U.S.C. § 1983 wherein he alleges that defendants: (1) retaliated against him for the exercise of his constitutionally protected speech, in violation of the First Amendment; (2) deprived him of his constitutionally protected property interests without due process of law, in violation of the Fourteenth Amendment; and (3) engaged in a conspiracy to deprive plaintiff of his aforesaid constitutional rights. Plaintiff also asserts claims under New York State law (1) against the Town of Orangetown for violation of Civil Service Law § 61 and (2) against the individual defendants for tortious interference with plaintiff's existing contractual relationship with the Town of Orangetown. Presently before this court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons that follow, defendants' motion is granted.

## I. BACKGROUND

The following facts are gleaned from the parties' statements pursuant to Local

Civil Rule 56.1 of the United Stated District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.  Any disputes of material fact are noted.

Plaintiff has been continuously employed by the Town of Orangetown ("the Town") in various jobs since approximately June 1986.  At all relevant times, defendant Thom Kleiner was the Town Supervisor, defendant Ron Delo was the Director of the Orangetown Department of Environmental Management and Engineering ("EME Department") (which included the Sewer Department) and defendant Joe Rutkowski was the Chief Operator of the Sewer Department.

In or around January 2004, plaintiff was appointed to the position of Assistant Automotive Mechanic in the Sewer Department garage.  In or around September 2004, he was elevated to Automotive Mechanic I.  In April 2007, the position of Automotive Mechanic II became vacant when the supervisor of the Sewer Department garage retired.  Shortly thereafter, defendant Frank Peneno began working out of title as the interim supervisor of the Sewer Department garage.  In September 2007, the Automotive Mechanic II position was posted as a non-competitive class position. Plaintiff, Peneno and two others applied for the job.

The Town's hiring decision was constrained by the CSEA labor agreement which states as follows: "The Town agrees to give preference to a fulltime employees [sic] presently employed by the Town in filling job vacancies or new positions and that preference shall be given on a seniority basis, provided that an employee with the seniority has at least the basic qualifications to perform the job."  Defendant Rutkowski

interviewed the four applicants and then summarized his impressions of the candidates in a memorandum to defendant Delo.  Rutkowski's memo stated, in substance, that Peneno, Murphy and Stevenson would perform satisfactorily in the position, but Rutkowski did not believe plaintiff could do a satisfactory job.  Although Rutkowski acknowledged that plaintiff possessed the basic qualifications necessary, Rutkowski ranked plaintiff last among the applicants due to his lack of diesel experience and poor writing and spelling skills.  Defendant Delo (as EME Department Director) nonetheless recommended plaintiff for the position.  Defendants maintain that he did so because plaintiff possessed the minimum qualifications and was the most senior candidate; plaintiff contends that, upon his hiring, he was told by Delo that Peneno was better qualified but the Town was appointing plaintiff to the position because of his pending grievance against the Town.

Prior to plaintiff's appointment to the position, a meeting was held between Kleiner, Delo, Rutkowski, Peneno, and plaintiff.  The Town had never before held such a meeting involving the selected candidate and one who was passed over for promotion.  According the Kleiner, they held the meeting because the garage is a small department and the supervisors wanted to explain their decision to Peneno and give him an opportunity to express any concerns.  The three supervisors first met with Peneno alone, then met with plaintiff and Peneno together.  Defendants assert that Peneno, during his private meeting with the supervisors, expressed concern that plaintiff lacked the knowledge, experience and interpersonal skills to effectively supervise the garage.  Plaintiff, on the other hand, alleges that Kleiner, Delo and Rutkowski asked Peneno to monitor plaintiff's activities and provide Rutkowski with daily reports.  Plaintiff

asserts that the supervisors and Peneno conspired to garner as much negative information about plaintiff as possible in order to generate a pretext to remove plaintiff from the appointment as soon as possible.  Defendants deny said allegations and maintain that they merely told Peneno that his concerns were heard, that special attention would be paid to plaintiff's performance and that, after plaintiff's appointment, if Peneno had additional concerns he should bring them to Rutkowski's attention. Defendants admit that Peneno periodically verbally complained to Rutkowski about plaintiff's alleged incompetence, and complained once in writing (with copies to Kleiner and Delo).

In May 2008, the Town officially appointed plaintiff to the Automotive Mechanic II position, which required a mandatory six-month probationary period.  Peneno, believing that he was the most qualified candidate for the position, subsequently filed a grievance with the Town.  Plaintiff alleges that at or around the same time as the grievance was filed, Peneno began to secretly comply with the directions of Kleiner, Delo, and Rutkowski by monitoring plaintiff's activities and providing daily reports to the supervisors.  Plaintiff posits that this monitoring continued throughout his appointment via daily activity reports, memorandums, and correspondence.  Plaintiff also alleges that the supervisors assured Peneno, based upon his complaints, that plaintiff's probationary period would be extended another six months.  According to plaintiff, the Town had never before discussed extending a candidate's initial appointment probationary period. While defendants deny that Peneno was providing secret monitoring reports, they admit that, at some point, Kleiner and Delo discussed extending plaintiff's probationary period and that the extension of a Town employee's probationary period was an unusual

occurrence during Kleiner's tenure as Supervisor.  Ultimately, plaintiff's probationary period was not extended.

Shortly after his appointment in May 2008, plaintiff issued a memorandum to his subordinates[1] in the garage, requiring them (among other things) "to clean and straighten up" if they ran out of work, to put away newspapers and crosswords puzzles except during breaks, to bring all personal tools home, to unlock all shop cabinets and toolboxes and to report to him directly whenever they leave the shop.  In the same month, plaintiff complained to his direct supervisor, Rutkowski, that his subordinates' "abusive" workplace practices (including playing hacky-sack during work hours and spending excessive time reading newspapers) were a waste of taxpayer funds. According to plaintiff, Rutkowski told him that he should let those "minor issues" alone and that he should not take any further action to stop these alleged abuses. Defendants deny that Rutkowski told plaintiff not to take any further action and contend, instead, that Rutkowski told plaintiff that it was his shop to supervise and he should handle these matters as he deemed appropriate.

Plaintiff continued to frequently complain to Rutkowski that the unauthorized workplace practices were wasting taxpayer money and interfering with his subordinates' abilities to complete their assigned work.  In or about March 2009, according to plaintiff, he again complained to Rutkowski that his subordinates were engaging in leisure

---

[1] In May 2008, defendants Peneno and Boera were plaintiff's subordinates in the Sewer Department garage.  Defendant Fitzmaurice worked for the Town Sewer Department, but not in the Sewer Department garage.  Defendant Higgins became plaintiff's subordinate in September 2008.  Plaintiff reissued the memorandum when Higgins joined the garage.

activities during working hours and was again told to leave the issue alone.  Defendants deny that Rutkowski told plaintiff to leave the issue alone and, instead, assert that Rutkowski told plaintiff that he was in "full control of the garage" and to handle the issue as he thought appropriate.  Plaintiff asserts that he subsequently issued an "edict" which specifically banned the playing of hacky-sack on the Sewer Garage premises.  Defendants deny that said ban was ever announced or instituted.

On or about April 17, 2009, defendants Higgins, Boera, and Fitzmaurice were standing outside of the garage talking when plaintiff walked up behind Higgins and hit his left arm with a rolled up newspaper.  According to plaintiff, Higgins jokingly said something like "that's assault," to which plaintiff responded "Well, in case anyone missed it" and hit Higgins again with the newspaper.  Plaintiff and defendants dispute the level of force used and the context of the incident.  Plaintiff contends that he merely tapped Higgins with the newspaper and that it was clearly done in a joking manner because all of the defendants laughed during the incident.  Defendants assert that plaintiff used force as he struck Higgins with the newspaper and that none of the defendants laughed or believed that it was done in a joking manner.

Higgins went to report the incident to Rutkowski, but he was on vacation; Higgins reported the incident to Rutkowski upon his return.  Rutkowski then spoke to plaintiff, who stated that he only lightly tapped Higgins with the newspaper and that the incident happened approximately six months prior, rather than a few days before.  Rutkowski dismissed the complaint as not warranting further action.  Higgins subsequently brought the matter to Delo's attention, who told Rutkowski to investigate the matter further.  Prior to this incident, plaintiff had received no disciplinary complaints or reprimands from his

supervisors regarding his performance as Automotive Mechanic II.

On or about May 4, 2009, at the recommendation of Rutkowski, Peneno memorialized his alleged concerns about plaintiff's supervision of the garage in a memorandum, which was later forwarded to Kleiner, Delo, and Fitzmaurice. The memorandum states, in pertinent part:

> Knowing the circumstances of this situation, At the time of his [Johnston's] promotion, I was Promised by Thom Kleiner, Ron Delo, & yourself [Joe Rutkowski] that it would be monitored & given special attention so that things wouldn't get out of hand, I was told by Thom Kleiner, Ron Delo, & yourself [Joe Rutkowski] to inform Joe R. with any daily activities that I felt were inadequate, which I did for the first six months, with you (Joe. R.) Documenting his mistakes and shortcomings.

Peneno and Higgins also expressed to Delo that they were concerned for their safety in the garage after the newspaper incident. In June 2009, as part of the Town's investigation into the incident, Deputy Town Attorney Barbara Gionta questioned Plaintiff under oath about the April 17th newspaper incident. Plaintiff was represented by counsel at this time and counsel was present during the questioning.

On or about July 24, 2009, Delo preferred two charges (misconduct and incompetency) and four specifications against plaintiff. Two of the specifications (one for misconduct and one for incompetency) arose from the April 17th incident and the subsequent investigation thereof. The third specification (for incompetency) delineated numerous reasons why plaintiff, since September 2008, had allegedly been an incompetent supervisor. The last specification also accused plaintiff of incompetency based on the allegation that, on various occasions from January-June 2009, he followed subordinates into the bathroom and/or during lunch in an effort to give work assignments. Plaintiff, through counsel, denied all charges and specifications against

him.  On July 27, 2009, pursuant to Civil Service law § 75(3), the Town suspended plaintiff without pay for thirty days.

Plaintiff's disciplinary hearing was held on September 23, 2009 and October 29, 2009.  Plaintiff was represented by counsel throughout the hearing, which consisted of testimony from plaintiff, Higgins, Boera, Fitzmaurice, Peneno, Rutkowski and Delo.  Plaintiff testified, *inter alia*, as follows:  in April, 2009 he lightly tapped Higgins on the arm with a folded newspaper; Higgins moaned "ah, ah" and reacted in an exaggerated manner "as if he got hit with a bat;" plaintiff thought Higgins "was kidding around" so he again struck Higgins lightly on his arm with the newpaper.  Higgins initially testified that Fitzmaurice and Boera laughed during the incident, but later testified that their reaction was more like a snicker.  Boera and Fitzmaurice both testified that they did not laugh, giggle, snicker or do anything else to denote amusement during the incident.   Delo testified at the hearing that Higgins indicated to him that plaintiff used significant force when he hit Higgins.  At deposition, however, Delo stated that he did not ascertain from Higgins what level of force was used, and further testified that, to his knowledge, no one from the Town ever asked Higgins, in words or substance, "how hard did Mr. Johnson hit you with a newspaper?"

By Decision and Recommendation dated April 3, 2010, the Hearing Examiner found plaintiff guilty of all charges and specifications and recommended that the Town Board demote him.  On April 27, 2010, the Town Board demoted plaintiff to Automotive Mechanic I.  Plaintiff alleges that, since the Hearing Examiner's decision, he has been banned from working at the Sewer Garage, has not been given the opportunity to perform any job duties of an Automotive Mechanic I and, instead, has been made to

perform duties that are both demeaning and well below his pay grade.  He also alleges that the Town removed him from all overtime lists on August 27, 2009 and has prevented him from obtaining any overtime wages ever since.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to FRCP 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." See Fed. R. Civ. P. 56(a).  When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## III.  FIRST AMENDMENT RETALIATION

Plaintiff claims that defendants violated his First Amendment rights by instituting disciplinary charges against him in retaliation for his frequent complaints about his

subordinates' workplace abuses.  As a threshold matter, in order to succeed on his claim, plaintiff must establish that his speech was protected by the First Amendment. See Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  Generally, municipal employees are entitled to First Amendment protection when they speak as a private "citizen addressing matters of public concern." See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  A "matter of public concern" is one that relates to a "matter of political, social, or other concern to the community." See Connick v. Myers, 461 U.S. 138, 146 (1983).

However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." See Garcetti, 547 U.S. at 421.  "This is the case even when the subject of an employee's speech is a matter of public concern." Ross v. Breslin, 693 F.3d 300, 305 (2d Cir. 2012).  Speech is made "pursuant to" an employee's "official duties" if the speech at issue "owes its existence to a public employee's professional responsibilities." See Looney v. Black, 702 F.3d 701, 710-11 (2d Cir. 2012).  The determination of whether or not speech owes its existence to professional responsibilities requires a "practical" inquiry. See Garcetti, 547 U.S. at 424.  "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424–25.  More specifically,

[t]he inquiry into whether a public employee is speaking pursuant to [his]

official duties is not susceptible to a brightline rule.  Courts must examine
the nature of the plaintiff's job responsibilities, the nature of the speech,
and the relationship between the two.  Other contextual factors, such as
whether the complaint was also conveyed to the public, may properly
influence a court's decision.

See Ross, 693 F.3d at 306 (citation and internal quotation marks omitted).

Here, defendants contend that plaintiff's complaints about his subordinates'
workplace abuses are not protected under the First Amendment because plaintiff was
speaking pursuant to his official duties.  Plaintiff argues that he was speaking as a
private citizen because his job duties did not *require* him to complain to Rutkowski about
his subordinates' workplace abuses.  The Second Circuit has held, however, that
"speech can be pursuant to a public employee's official job duties even though it is not
required by, or included in, the employee's job description, or in response to a request
by the employer . . . [where the speech is] part-and-parcel of his concerns about his
ability to properly execute his duties."  See Weintraub v. Board of Educ., 593 F.3d 196,
203 (2d Cir. 2010) (internal citations and quotation marks omitted).

Contrary to plaintiff's contentions, his complaints about his subordinates'
workplace abuses were inextricably intertwined with the adequacy of his performance
as supervisor of the Sewer Garage.  Plaintiff effectively conceded this point when he
testified at deposition as follows:

Q.  As the automotive mechanic two in the garage you were the

supervisor of the garage?

A.  Technically, I guess, I wasn't a supervisor but, yes.

Q.  Can you explain what you mean by that?

A.  I was directing.  I wasn't – well, I take that back.  Yes, I was the

supervisor.

Q.  And as far as day-to-day assigning of tasks that was your

responsibility?

A.  Yes.

Q.  And you viewed it as being your responsibility to make sure that the

garage was efficient?

A.  Yes.

Q.  And that included making sure the people didn't read newspapers for

too long?

A.  Yes.

Q.  And that also included making sure that people didn't play hacky sack

for too long?

A.  Yes.

Q.  And in the end that even included making sure that your employees

that the people underneath you didn't get hurt playing hacky sack?

A.  Yes.

See Declaration of Kevin T. Mulhearn, Exh. J, at 72-73.  Shortly after he became

supervisor, in May 2008, plaintiff issued a memorandum to his subordinates in a clear

attempt to limit their leisure activities during working hours in order to ensure that the

Sewer Garage was operating efficiently and effectively.  Later that same month, and

frequently thereafter, plaintiff complained to Rutkowski that the unauthorized workplace

practices were wasting taxpayer money and interfering with his subordinates' abilities to

complete their assigned work.  According to plaintiff, he eventually issued an "edict"

which specifically banned the playing of hacky-sack on the Sewer Garage premises.

In sum, it is clear from the record that plaintiff's complaints about his subordinates' workplace abuses were made not as a citizen but, rather, pursuant to plaintiff's duties as the Sewer Garage supervisor. "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (internal quotation marks and citation omitted). Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation claim.[2]

## IV.  DUE PROCESS

Plaintiff claims that his demotion to Automotive Mechanic I violated his due process rights.[3] In order for plaintiff to succeed on said claim, he must demonstrate (1) that he possessed a liberty or property interest in his position as Automotive Mechanic II and (2) he was deprived of that interest without due process. See Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Defendants concede that plaintiff

---

[2] In any event, the record is devoid of any evidence that defendants Kleiner, Boera and Fitzmaurice participated in, procured, instigated or ratified the institution of disciplinary charges against plaintiff. See Clark v. Levesque, 336 Fed. App'x 93, 94 (2d Cir. 2009). Accordingly, defendants Kleiner, Boera and Fitzmaurice are entitled to summary judgment on plaintiff's First Amendment retaliation claim.

[3] In his Complaint, plaintiff also alleged that he was suspended, deprived of overtime and deprived of the opportunity to perform any job duties of an Automotive Mechanic I without due process. Defendants moved for summary judgment on said claims, on the grounds that (1) plaintiff was provided with due process relating to his thirty-day suspension and (2) plaintiff had no property interest in working overtime or in "commensurate" duties. Plaintiff failed to respond to defendants' arguments and, thus, apparently concedes defendants' points and waives said claims.

possessed a property interest in remaining employed in the promoted position, but argue that they are entitled to summary judgment because, prior to his demotion, plaintiff was provided with notice, a hearing and an opportunity to respond to the charges against him.  Plaintiff contends, however, that his due process rights were violated because the hearing was "a sham and pretense."  Plaintiff specifically asserts that Delo, Rutkowski, Boera, Fitzmaurice and Higgins testified perjuriously at the hearing for the purpose of establishing a basis for plaintiff's demotion.

"In evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" Rivera–Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (quoting Hellenic American Neighborhood Action Comm. v. City of New York ("HANAC"), 101 F.3d 877, 880 (2d Cir.1996) (citing Hudson v. Palmer, 468 U.S. 517, 532 1984) and Parratt v. Taylor, 451 U.S. 527, 541 (1981))).  Plaintiff argues that the "sham" hearing was not the result of random, unauthorized acts by municipal employees, but rather was the product of a "long-established municipal policy, practice, and/or custom to take whatever action was necessary to remove [plaintiff] from the Automotive Mechanic II position."  See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 25.  Plaintiff's conclusory assertion notwithstanding, he does not claim that the established state procedure for demoting municipal employees violates due process; he claims, instead, that his hearing was a sham due to the allegedly perjurious testimony–which clearly constitutes random, unauthorized acts by the individual defendants. See Birmingham v. Ogden, 70 F. Supp.2d 353, 370 (S.D.N.Y. 1999).

-14-

"When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Rivera-Powell, 470 F.3d at 465. The Second Circuit has "held that an Article 78 proceeding is an adequate post-deprivation remedy in cases in which the claim of due process is based on a random, unauthorized act of a state employee." See Kelly v. McGuire, 12 Fed. App'x 36, 37 (2d Cir. 2001). See also HANAC, 101 F.3d at 881 (Article 78 hearing an adequate post-deprivation remedy for property interest in job status). Accordingly, defendants are entitled to summary judgment on plaintiff's due process claim.

## V. CONSPIRACY

In order to prevail on a claim for conspiracy under 42 U.S.C. § 1983, plaintiff must show that defendants "acted in a willful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated his rights, privileges, or immunities secured by the Constitution or federal courts." See Shabazz v. Pico, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (quotations and citations omitted). In other words, plaintiff must demonstrate: (1) an agreement between two or more state actors or a state actor and a private party; "(2) to act in concert to inflict an unconstitutional injury and (3) an overt act done in furtherance of that goal causing damages." See Ostenson v. Suffolk County, 236 Fed. App'x 651, 653 (2d Cir. 2007). Plaintiff alleges that defendants are not entitled to summary judgment on his conspiracy claim because there is ample evidence in the record to demonstrate that defendants conspired to remove him from the Automotive Mechanic II position in violation of his constitutional rights.

However, "[t]o succeed in a § 1983 conspiracy claim, a plaintiff must prove not

only a conspiracy, but an actual deprivation of a constitutional right." See Richardson v. New York City Health and Hosps. Corp., No. 05 Civ. 6278, 2009 WL 804096, at *17 (S.D.N.Y. Mar. 16, 2009) (quotation and citation omitted).  Here, for the reasons stated above, plaintiff has failed to establish an underlying constitutional violation.  "[B]ecause [p]laintiff has not produced sufficient evidence that a constitutional violation occurred to survive summary judgment, 'there can be no civil rights conspiracy to deprive that right.'"  Id. at 18 (quoting Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998)). Accordingly, plaintiff's conspiracy claim must be dismissed.

## VI.  MUNICIPAL LIABILITY

A municipality may be held liable under § 1983 where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  However, because plaintiff has not demonstrated any constitutional violations by any individual employed by the Town, there is no basis on which to predicate Monell liability against the Town. "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or its policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Accordingly, plaintiff's § 1983 claim against the Town must be dismissed.

## VII.  REMAINING PENDANT STATE CLAIMS

"In general, where the federal claims are dismissed before trial, the state claims

should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d. Cir. 1998) (citations omitted).  See also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1996) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Having dismissed the underlying federal claims, and with due consideration to concerns of judicial economy, efficiency, convenience and fairness, the Court declines to exercise jurisdiction over the pendent state law claims.  Accordingly, the remaining state law claims are dismissed.

## VIII.  CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is granted.

Plaintiff's complaint is, therefore, dismissed in its entirety.

The Clerk of the Court is respectfully requested to terminate the pending motion (Docket #20) and to enter judgment accordingly.

Dated:  March 22, 2013
        White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.